[Civ. No. 16026.   Second Dist., Div. Three.   Apr. 30, 1948.]

INEZ D. BLINKINSOP, Appellant, v. SIMON L. WEBER et al., Respondents.

Maddox & Vaughn, A. Stewart Maddox, Jr., Arthur Strock and Jack O. Goldsmith for Appellant.

Syril S. Tipton and Fulcher & Wynn for Respondents.

WOOD, J.—Defendants were owners of a 20-unit apartment court, consisting of five two-story apartment buildings in each of which there were four apartments—two on the ground floor and two on the second floor. Plaintiff was employed by defendants on January 15, 1945, as manager of the apartment court, and as such manager one of her duties was to clean the sidewalks on the premises. Her compensation as manager was $60 per month and the right to occupy one of the apartments. She occupied a lower apartment and there were two cement steps at the rear entrance thereof. On May 5, 1945, while plaintiff was on the lower cement step at that entrance, and while she was acting within the scope of her employment preparatory to cleaning the front steps of the building, she fell and injured her ankle.

At the time of the accident the defendants did not have compensation insurance or permission to self-insure. Under such circumstances plaintiff was entitled to file an ap-

plication for compensation with the Industrial Accident Commission and also commence an action at law for damages (Lab. Code, § 3706.) On June 1, 1945, the plaintiff filed an application for compensation with the commission and thereafter commenced this action for damages. At the time of the trial the application for compensation had not been determined by the commission. Judgment herein was for the defendants, and the plaintiff appeals.

The trial court found that the defendants were not negligent "in not providing for plaintiff a safe place in which to work"; that defendants did not negligently maintain the said steps; that it is not true that as a proximate result of negligence of the defendants or any of them plaintiff was injured; and that defendants exercised ordinary care in all respects in maintaining said property. Plaintiff contends that the evidence was insufficient to support these findings.

In an action of this kind it is presumed that the injury was a direct result of negligence of the employer. (Lab. Code, § 3708.) Also, in such an action the burden of proof is upon the employer to rebut the presumption of negligence. (*Id.*) Also, contributory negligence and assumption of risk are not defenses in such a case. (*Id.*)

█ Appellant asserts that defendants were negligent in that the steps from which plaintiff fell constituted a stairway, and that such stairway was maintained in violation of section 16413 of the Health and Safety Code which requires that "Every stairway shall have at least one handrail," and in violation of other sections thereof which specify the dimensions of the treads and risers of a stairway. The two cement steps involved here extend from the sidewalk to a point on the wall of the building 7⅞ inches below the floor of the service porch. In other words, the bottom step adjoins the sidewalk, and the second step adjoins the wall of the building at such a distance below the porch floor that a person, entering the porch, steps upward and into the porch from the second cement step.

A stairway is not defined by statute. Section 16413 of the Health and Safety Code, which states that "Every stairway shall have at least one handrail," is preceded by three sections relating to the construction of stairways and each of those sections (§§ 16412, 16411, and 16410) refers to a stairway "in" an apartment house. Chapter 13 of the Health and Safety Code, which relates to stairways and includes said sec-

tion 16413, is based upon the portion of the State Housing Act of 1923 which relates to stairways. (See Stats. 1923, ch. 386, §§ 43-50.) Section 46 of the 1923 statute also includes the provision: "Every stairway shall have at least one handrail." In said section 46, preceding the provision regarding handrails, there are three paragraphs which are in substance the same as said sections 16412, 16411, and 16410, of the Health and Safety Code. In other words, the three paragraphs in said section 46, preceding the paragraph regarding handrails, also refer to stairways "in" an apartment house. Since the provision in section 46 of the 1923 statute, requiring a handrail on every stairway, is preceded by three paragraphs in that same section relating to stairways "in" an apartment house, it appears that the said provision therein, requiring a handrail on every stairway, relates to stairways "in" an apartment house. Since section 16413 of the Health and Safety Code, requiring a handrail on every stairway, is based upon said section 46 of the 1923 statute, and is preceded by three sections which are substantially the same as provisions in said section 46, the said section 16413 of the Health and Safety Code is to be considered in connection with its preceding sections 16412, 16411, and 16410. Those sections relate, as above stated, to stairways "in" an apartment house, and in general relate to stairways from one floor to another. The steps involved here were steps to the rear entrance of plaintiff's apartment only, and were not steps used in common by other tenants to enter the apartment house. The steps involved here do not constitute a stairway within the meaning of the word "stairway" as used in section 16413 of the Health and Safety Code. A handrail was not required on these steps. Appellant relies upon the case of *McStay* v. *Citizens Nat. T. & S. Bank*, 5 Cal.App.2d 595 [43 P.2d 560], in which the approach to a platform in a hotel dining room consisted of two steps. The plaintiff therein who had been standing on the platform, turned to descend and "taking one step, which she thought was her next step on the platform 'she just stepped off.' " That was an action for damages based upon the alleged negligence of the defendant in maintaining the platform and steps, and did not involve an employer and employee relationship or the failure of defendant to carry compensation insurance. There was no handrail on the steps therein, and the place where the platform was located was unlighted and in darkness, except for light coming through a door from another room. The court therein did not decide that the two steps

constituted a stairway. The trial court therein left to the jury the question as to whether the steps constituted a stairway, and instructed the jury as to the provisions of the State Housing Act respecting the maintenance of handrails on stairways, and that if the jury found that the steps constituted a stairway the failure to maintain handrails thereon was negligence as a matter of law. The reviewing court held that the instruction was not improper. It said further (p. 602) that "While all stairways are series of steps ascending or descending to a different level, all steps so ascending or descending are not necessarily stairways." Since there were charges of negligence therein other than the absence of handrails, it does not appear, of course, whether the jury found that the two steps constituted a stairway.

The Health and Safety Code requires that the dimensions of treads and risers on stairways shall be within the limits of certain minimum and maximum specifications, and that all the treads on a particular stairway shall be of the same width and that all the risers thereon shall be of the same height. The treads and risers on the two cement steps herein were within the limits of specified dimensions required by the act, but the tread of the lower or first step was one-half inch wider than the tread of the top or second step, and the riser of the first step was approximately three-eighths of an inch higher than the riser of the second step. The distance from the top of the second step to the porch floor was one-half an inch higher than the second riser. Since the steps herein did not constitute a stairway within the meaning of the State Housing Act, the failure to construct the treads and risers of the steps in accordance with the dimensions required by the act was not negligence as a matter of law.

The trial court was required, however, to determine whether as a matter of fact it was negligence, irrespective of the requirements of the act, to maintain the steps, and was required also to determine as a matter of fact whether such negligence, if any, was a proximate cause of plaintiff's injury. In addition to the above description of the steps, the tread of the lower cement step sloped downward away from the house five-sixteenths of an inch on the west side and three-sixteenths of an inch on the east side, the second cement step sloped downward seven-eighths of an inch on the west side and five-eighths of an inch on the east side. The treads of the two steps had a friction resistance of approximately 11 per cent less

than the surface of the adjoining sidewalk, which resistance of the sidewalk ''was normal or average for'' sidewalks. Also, there was no ''nosing'' or overhanging at the edge of each step where the treads and risers joined. The screen door on the porch swung outward over the steps.

Plaintiff testified that she intended to clean a step at the front of the apartment building; that she went onto the service porch and got a 4-gallon bucket and a broom; that she had the bucket, which was half full of water, in her left hand and had the broom in her right hand; that she opened the screen door of the porch with her right hand, and held it open with her right hand while she went through the doorway; that she went onto the lower cement step, and while she was on that step she reached over and set the bucket and broom on the sidewalk; that she was then ''going to turn around and go back in the house''; that ''I turned around on that bottom step, and as I turned I fell''; that at the time she started to fall the screen door was at her back and it was held open by her body; that before she started to fall she was standing ''with both feet'' on the bottom step, and that ''I went to turn around, and I turned my left foot and then put my right foot around it on the step and that is when'' she slipped; and that she fell forward on the ground.

The findings of the court, above referred to, that defendants were not negligent include, of course, an implied finding that defendants overcame the presumption that plaintiff was injured as the direct result of negligence of the defendants. The evidence was sufficient to support those findings. As above indicated, it was a question of fact for the trial court as to whether the condition of the steps was such as to amount to negligence. Even though there were small variations in the dimensions of the treads and the risers, and in the slope of the treads, and even though the treads may have been about one-tenth smoother than the average sidewalk, and even though there was no ''nosing'' on the edges of the steps, it does not necessarily follow that the steps were negligently maintained. Even if the court had found that the condition of the steps was such as to amount to negligence, the evidence was sufficient to support the further finding that plaintiff's injury was not the proximate result of negligence of defendants. Plaintiff's testimony as to her actions in attempting to turn around on the 13-3/4-inch wide bottom step by turning her left foot and putting her right foot around her left foot may have been the basis for

the determination by the court that the condition of the steps was not a cause of the accident.

Appellant asserts further that the court erred in refusing to receive testimony of a civil engineer, who was called as a witness, as to whether in his opinion the steps were safe; whether they were of normal construction; whether they were built according to sound construction; whether they were built in accordance with good construction practice; and whether they were built in accordance with good architectural practice. The opinion of an expert should be received if it adds instruction to that which the jury is able to obtain from the data before it. (*Burch* v. *Valley Motor Lines, Inc.*, 78 Cal. App.2d 834, 841 [179 P.2d 47].) The witness testified in detail as to the dimensions of the treads and risers of the steps, and the slope and friction resistance of the treads. Photographs of the steps, and a map of the premises made by the witness, were placed in evidence by the appellant. It was not errror to reject the opinion of the witness as to whether the steps were safe. "Usually an expert cannot be asked whether a structure is a safe one, but all of the facts may be elicited from the witness from which the conclusion follows." (*McStay* v. *Citizens Nat. T. & S. Bank*, 5 Cal.App. 2d 595, 601 [43 P.2d 560].) The questions as to whether the steps were of normal and sound construction, and whether they were built according to good construction and architectural practice, were too indefinite and broad, and it was not error to sustain the objections to them. It appears, however, that the objections were not sustained by reason of the form of the questions, but were sustained by reason of the trial judge's belief that the opinion of an expert regarding the construction of the steps was inadmissible. After objections to the questions above referred to had been sustained, counsel for plaintiff asked the judge whether the questions were objectionable by reason of counsel's manner of phrasing them, and the judge replied that he believed that expert testimony was not proper, and that "All I want to take is the facts." The opinion of the witness as to whether the steps were built in accordance with standard and accepted construction and architectural practice should have been received. His opinion thereon might have been of some assistance in determining whether the defendants were negligent in maintaining the steps. In the case of *Martin* v. *Angel City Baseball Assn.*, 3 Cal.App.2d 586 [40 P.2d 287], which related to the construction of a stairway in a baseball grandstand, the

witnesses were asked what in their knowledge was the condition of the stairway in relation to the standard or approved practice of such stairhead structure. The court said, on pages 589 and 590: "Such evidence was proper and relevant to an enlightened consideration of the question whether appellant was negligent in the maintenance of such stairhead." In the McStay case, *supra,* it was said at page 601, regarding the opinion of an expert as to the construction of steps in a hotel dining room: "It was proper to an enlightened consideration" of the question as to whether appellant was negligent. In that case the step construction was referred to (on p. 602) as being of peculiar character. Although the opinion evidence of the expert as to whether the steps herein were built in accordance with standard and accepted construction and architectural practice was admissible, it cannot be concluded that it was prejudicial error to fail to receive it. The witness was permitted, as above stated, to testify fully and in detail, by reference to photographs and a map, concerning the location, design, and construction of the two cement steps which were not of peculiar or unusual character.

The judgment is affirmed. The appeal from the order denying the motion for a new trial is dismissed.

Shinn, Acting P. J., and Vallée, J. pro tem., concurred.